## Farrell *v.* Kluge, Inc., Appellant.

Argued April 19, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Charles L. Cunningham,* with him *Stonecipher & Cunningham,* for appellant.

*Robert L. Prior,* with him *Julia M. Doyle,* for appellee.

OPINION BY WOODSIDE, J., August 30, 1954:

This comes before us on appeal from the refusal of the Court of Common Pleas of Allegheny County to grant motions for a new trial and judgment non ob-

stante veredicto after verdict for the plaintiff in an assumpsit action based upon rescission of a contract for the purchase of a printing press.

The plaintiff entered into a contract with defendant for the purchase of printing press, f.o.b. St. Paul, Minn. In connection therewith she signed and executed a conditional sales contract providing for monthly payments to commence 30 days after installation of the press in the plaintiff's plant by the defendant. Prior to the arrival of the press in Pittsburgh the plaintiff paid the defendant $705.24.

The jury having found for the plaintiff we must view the evidence in the light most favorable to her, and give her the benefit of every inference of fact pertaining to the issue involved, which may reasonably be deducted from the evidence.

On October 29, 1949, when the printing press arrived in Pittsburgh and before it was removed from the common carrier's truck it was discovered that it had a broken leg. The plaintiff's husband, the manager of her printing business, immediately telephoned the defendant's office in St. Paul and told its agent of the broken condition of the press. He demanded that defendant either refund to her the money she had paid the defendant or send her another press, or rebuild the damaged one.

The defendant suggested that plaintiff's manager should not get excited, that these things happened every day, that he should unload the press from the truck and file a claim against the carrier; and that either the carrier or the defendant would take care of the damage. The plaintiff thereupon permitted the press to be unloaded and immediately wrote to the defendant to determine the cost of repair and, as directed by defendant, made a claim against the carrier which claim the carrier never paid.

The press was not shipped directly to Pittsburgh. It had been shipped from the defendant's plant in St. Paul, Minn. to Lemoyne, Pa. on a uniform order bill of lading in which the defendant was made consignee. The common carrier was York Motor Express. When the intended purchaser in Lemoyne did not accept the press it was shipped at the direction of the defendant on a uniform order bill of lading, in which the defendant was again named consignee, to Pittsburgh by Hartman Transportation Co. It was delivered to plaintiff's place of business by the Hartman Transportation Co.

There were telephone calls and letters to and from the parties in great number. Representatives of the defendant visited the plaintiff—at least four of them—on a number of different occasions.

After long negotiations, during which the defendant did nothing to repair or replace the press except promise, avoid and suggest, the defendant brought an action to replevy the press and obtained possession thereof.

The plaintiff then sued to recover $1196.60 plus interest, which sum consisted of the amount paid defendant—$705.24 the amount paid the carrier—$231.36, and a storage bill of $260. The jury found for plaintiff in the amount of $705.24 plus interest, or a total of $916.81 which was reduced by the court below to $835.81.

The appellant contends that the plaintiff could not maintain this action because she did not offer to return the press for the specific purpose of abrogating the contract, but instead gave the defendant the option of returning her money, repairing the press, or supplying her with a new press. It further contends that she could not recover in this action because she exercised an act of ownership by making a claim of the carrier, and that under any circumstances a broken leg was

not such a breach of the contract as warranted rescission.

Taking these contentions in inverse order we can dispose of the last one by observing that the machine was useless with the broken leg, even the defendant admitting it could not be fixed on plaintiff's premises and that it was necessary to return it to Minnesota for repairs.

November 9, 1948 defendant wrote to plaintiff as follows: "We would not be able to furnish a mechanic to complete this repair in your plant as they do not have the facilities to do so and we recommend that the press be returned here for a repair of this general nature, in that—press must be completely dismantled and then reassembled."

Even before the machine was removed from the common carrier's truck plaintiff demanded that defendant return her money or repair the press or take back the press and supply her with a new one. The defendant insisted that she make claim against the carrier and led her to believe it was a routine matter for such a claim to be paid and that it (the defendant) would repair or replace the machine and the carrier would pay for it. The defendant cannot now object to plaintiff's effort to recover from the carrier, which it urged her to attempt and which if successful would have been to the advantage of the defendant as well as to the plaintiff.

In this connection it should be noted that the press was not shipped directly to plaintiff but was in the hands of carriers under the direction of the defendant who under the circumstances could not have been acting as agent for the plaintiff.

All during the negotiations plaintiff insisted that the defendant take back the machine and return to her the money she had paid for it. The fact that she did

not close the door to the defendant's repairing the machine or giving her a new one does not now prevent her from recovering in this action.

The applicable statutory provisions are found in The Sales Act of May 19, 1915, P. L. 543, §69, 69 PS §314.[1]

It provides as follows:

"First. Where there is a breach of warranty by the seller, the buyer may, at his election,—

"(a.) Accept or keep the goods, and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price;

"(b.) Accept or keep the goods, and maintain an action against the seller for damages for breach of warranty;

"(c.) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for breach of warranty;

"(d.) Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller, and recover the price or any part thereof which has been paid.

"Second. When the buyer has claimed and been granted a remedy in any one of those ways, no other remedy can thereafter be granted.

"Third. Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if the de-

---

[1] Now repealed by the Pennsylvania Uniform Commercial Code of 1953.

terioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"Fourth. Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price.

"Fifth. Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuse to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by section fifty-three."

Under the fifth paragraph of the above section plaintiff had a lien on the press for the money she had paid the defendant and which the defendant refused to return to her. Therefore the fact that plaintiff resisted defendant's replevin action does not prevent plaintiff from recovering in this action.

As before indicated the plaintiff had discussed a course of action in this matter prior to accepting the press from the carrier, which course of action was suggested by the defendant. Until the press was repossessed by the defendant it remained where it had been unloaded. Plaintiff never used it, and never permitted it to be installed.

Considering the size of the press, the distance to the defendant's plant and the circumstances of the case

the plaintiff was not under a duty to deliver the press to defendant. *Kaminsky v. Levine,* 106 Pa. Superior Ct. 278, 281, 161 A. 741 (1932).

During the entire period when the press was in the plaintiff's plant the representatives of the defendant continued to talk of adjustment. Defendant took the position during the negotiations that the press could be repaired only by it at its factory and could be installed only by it on plaintiff's premises; but the press never was repaired or installed. Under the circumstance there was no acceptance of the broken and useless press by the plaintiff.

It was not necessary, after having given notice of the damage, for the plaintiff to immediately insist upon the press being removed by the defendant. *Kirk Johnson Co. Inc. v. Light,* 100 Pa. Superior Ct. 425, 427 (1930).

Furthermore, the defendant itself by its action of replevin and its repossession of the press treated the contract as rescinded. *Kelley Springfield Road Roller Company v. Schlimme,* 220 Pa. 413, 419, 420, 69 A. 867 (1908).

Under the agreement the periodic payments were to start after the press was installed by the defendant. But the defendant never installed the press. Instead it repossessed it. Having thus treated the contract as rescinded it cannot now deny to the plaintiff the right to also treat the contract as rescinded and to recover the purchase price which she paid for a machine which never could be used and which the defendant knew from the day it was placed on plaintiff's premises could not be used.

Judgment affirmed.